Complaint                                                                                                                September 9, 2014

## Plaintiffs

Maria Roges for herself, and as Parent and Next Friend of NH; and Kenneth Hawkes for himself and as Parent and Next Friend of NH; and NH, a minor disabled child, by his parents Maria Roges and Kenneth Hawkes.
29 Pleasant Street Unit 1
Dorchester, MA 02125

vs.

## Defendants

1. Boston Public Schools, a municipal agency of the City of Boston, Massachusetts; Acting Superintendent John McDonough
   26 Court Street 7th Floor
   Boston, MA 02108

2. School Committee, Boston Public Schools, Michael O'Neill, Chairperson
   26 Court Street, 4th Floor
   Boston, MA 02108

3. Office of Special Education and Student Services of Boston Public Schools; Catherine Constant, Executive Director
   26 Court Street, 7th Floor
   Boston, MA 02108

4. Bureau of Special Education Appeals (BSEA), an administrative agency of the Executive Office for Administration and Finance, State of Massachusetts; BSEA Hearing Officer Sara Berman
   1 Congress Street, 11th Floor
   Boston, MA 02114

## Jurisdiction

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, Federal Laws, and 34 CFR 300.514 (b), appeal of BSEA hearing decision, and 34 CFR § 300.516 appeal of BSEA hearing decision through a civil action in Federal District Court.

Complaint                                                                                                           September 9, 2014

## Facts

1. Plaintiffs seek for this court to hear an appeal of Bureau of Special Education Appeals (hereafter d 'BSEA') Decision #1308779, issued by BSEA Hearing Officer Sara Berman,('Hearing Officer') on June 13, 2014. Pursuant to 34 CFR 300.514 (b) and 34 CFR § 300.516, Plaintiffs seek for the court to hear their appeal within the 90 calendar day statute of limitations for appealing the BSEA decision.
2. Plaintiffs allege that the Hearing conducted by BSEA was procedurally flawed because the BSEA failed to carry out its responsibility to issue subpoenas under the required hearing timelines, (BSEA rule VIII). This fact did not become known to Plaintiffs until after the start of Hearing proceedings on April 8, 2014.
3. BSEA's failure to issue subpoenas was also not known to Hearing Officer until the first day of Hearing. On learning that witness subpoenas had not been issued within required timelines of BSEA Due Process Hearing rule VIII, Hearing Officer should have ordered the Hearing postponed. Plaintiffs were denied their right to have their hearing conducted according to the rules and timelines set out by BSEA rule VIII.
4. On learning that subpoenas were not issued in accordance with BSEA rule VIII, Hearing Officer issued emergency subpoenas to a small fraction of the witnesses in an ad-hoc procedure that denied Plaintiffs sufficient time to provide reasoned arguments against the Defendant's objections to a majority of the subpoenas.
5. Hearing Officer exercised abuse of discretion by vacating a critical subpoena, based on witness' assertion of physical inconvenience due to pregnancy at the time of the Hearing. Leah Blake, former Principal of the Harbor Middle School, was issued an emergency subpoena without objection from Defendants.
6. Although under BSEA rule VIII (C), Hearing Officer has discretion to vacate a subpoena that imposes undue burden, the physical convenience of a witness should not qualify as sufficient burden to supersede a disabled child's due process rights. By vacating this subpoena Plaintiffs were denied their right under BSEA rule XI (4) and (5) to compel attendance of a witness, and to examine and cross examine a witness.
7. Hearing Officer's finding that Plaintiffs son should be placed in a more restrictive setting is in direct opposition to the Least Restrictive Environment clause of IDEA, 34 CFR § 300.116 (e). Plaintiffs seek to keep their son in the same type of inclusive education placement from which he has benefitted over the majority of his academic career. Hearing Officer's decision does not dispute that Plaintiffs' son has derived educational benefit from his inclusive placement, nor that it is his rightful stay-put placement.
8. Under 34 CFR § 300.116 (a) (2) (ii) removal to a more restricted environment is warranted ONLY when the less restrictive environment has been tried and found to be unsuccessful. The evidence and record of Hearing show that no effort to implement the school's proposed IEP in a less restrictive environment in accordance with 34 CFR § 300.116 (a) (2) (ii) has been attempted or proposed. Hearing Officer should accordingly have ordered district to implement their proposed IEP in a less restrictive setting.

2

9. The Decision is not in accordance with 34 CFR §300.116, because it cites the need for individualized instruction to warrant removal from a less restrictive to a more restrictive educational placement. The hearing officer argues that without group instruction, the current placement provides no educational benefit. In fact no evaluator has recommended large group instruction as a needed component of FAPE for Plaintiffs' son.
10. Hearing Officer's decision is based on recommendations from two evaluators, both evaluations were conducted in 2011, shortly after Plaintiff's son had been demonstrated to be so emotionally destabilized as to warrant his removal to an interim placement at parents' and without objection by Boston's Office of Special Education.
11. Based on their age, the two evaluations from 2011 should have been given little weight, or not even admitted. Based on the fragile emotional state of NH at the time these evaluations were done, they should have been considered no longer to reflect his current profile or the best setting in which to implement his IEP.
12. The only current evaluation presented at Hearing was shown by Plaintiffs to have copied and pasted all of its recommendations but one from an article on mainstreaming children with autism, which is widely available on the internet. The single individualized recommendation in that evaluation is for removal to a more restrictive placement based on NH's need for individualized instruction and curriculum modifications, and because of evaluator's stated belief in the benefits of more restrictive environments. While evaluators have every right to hold beliefs on the best methods of educating students, 34 CFR § 300.116 (a) (2) (ii) is clear on how this may be done, and is intended to prevent such arbitrary and ad-hoc placement decisions.
13. The BSEA decision does not respond to Plaintiffs request for compensatory occupational and speech therapy, which Boston did not provide during the 2011 and 2012 school years. The BSEA decision is silent regarding Plaintiffs' request for compensatory services for several years of missed schooling. The decision as written is insufficient because it fails to either grant or deny this request.
14. The BSEA decision finds on the one hand that Boston's proposed IEP encompasses goals, objectives and services that address most or all of Student's needs and provides for the recommendations of all evaluators. On the other hand, the BSEA decision later finds that Boston's proposed program is not appropriate because it does not contain the services, goals, and objectives recommended by evaluators. The decision as written is contradictory in its own findings, and insufficient to direct clear action.
15. The hearing record contains sufficient credible evidence and witness testimony to show that Boston's proposed IEP does not address most or all of NH's needs, including a lack of program oversight by a qualified BCBA, meaningful transition of vocational services, or specific services to address social skills deficits beyond an assertion that such services will be provided, and therefore does not provide a Free and Appropriate Education as laid out in CFR 34 300.17 (d)

Complaint                                                                                                                September 9, 2014

16. The Service Delivery Grid, section C of Boston's proposed IEP categorically does not contain the services and personnel required to support implementation of its stated goals and objectives. Hearing Officers findings indicate this unambiguously, yet does not order any specific services to be added to the IEP, in accordance with 34 CFR 300.320 (4) (i) and (ii).
17. Boston's proposed IEP is not in accordance with 34 CFR 300.320 (5). because it fails to provide any indication of how the IEP's stated inclusion opportunities will be provided in the Service Delivery Grid, section C. Hearing Officer's decision notes this fact but fails to order any specific modifications to the Service Delivery Grid of Boston's IEP.
18. NH is now 17 years old, and will age out of his eligibility for special education in accordance with 34 CFR § 300.101. Despite NH being out of school since May 2011, Boston has at no time until the end of the BSEA hearing in April 2014 informed the parents that they had the right to cite stay-put rights to their son's last accepted inclusive placement.
19. Boston at any time since 2011 could have initiated a Due Process Hearing at BSEA and assumed the burden as moving party to show that their proposed IEP can not be implemented the inclusive setting in which similar IEPS were implemented year after year, instead letting NH go without a school for three years until the parents were forced to take on the burden of being the moving party in a dispute, with additional burden of having to argue without representation as they lack the financial means to retain Counsel for their son. Given these extraordinary circumstances, Plaintiffs argue that any burden on them as moving party should be lowered as they are seeking only to exercise stay put rights for their son in accordance with 20 U.S.C. § 1415(j).
20. The BSEA decision acknowledges that BSEA does not have jurisdiction to award monetary damages. Plaintiffs have exhausted all administrative remedies in seeking this relief in their Due Process Hearing complaint.
21. Plaintiffs allege Boston systematically isolated their son daily over an extended period, failed to provide him with educational programming during daily periods of isolation, failed to implement his IEP, and failed to follow his written behavior plan.
22. Parents allege that as a direct consequence of allegations cited in 21, NH became so traumatized, emotionally and behaviorally, that they were forced to remove him from school.
23. Plaintiffs ask this Court hear their evidence showing that their son sustained severe long term psychological damage as a result of the negligence of school personnel in failing to follow their son's IEP and Behavior plan, and subjecting their son to daily isolation for large portions of each school day over an extended time period, during which time they provided no educational services.
24. Plaintiffs made near daily pleas over a period of months at all levels of administration within their son's school, and to the highest level of the Office of Special Education and Student Service, to make them aware of these events as they were taking place, to no avail.

## Relief

Plaintiffs seek Justice in the form of the following relief:

- Plaintiffs ask this Court to overrule the BSEA decision and order the district to return their son to his last accepted placement, full inclusion at the Harbor/Henderson Innovation School.
- Plaintiffs ask this Court to rule on their request for compensatory occupational, speech and APE services that the BSEA decision neither granted or denied.
- Plaintiffs ask the court to consider de novo, and rule on the legal basis under 34 CFR 300.320, of requiring parental liability waivers or preauthorization for physical intervention as a condition of IEP services for which a child has been found eligible. Based on consideration thereof, Plaintiffs ask this Court to overrule Hearing Officer's denial of compensatory ABA services.
- Plaintiffs ask that this court find the school district liable for the pain and suffering caused to their son, and themselves, for the psychological trauma to their son caused by the actions of school personnel and ask this Court to award the maximum allowable damages to their son and to themselves as punitive damages.
- Plaintiffs ask that this Court order the district to fund compensatory transition and vocational services for their son in consideration of lost educational opportunity resulting from Boston's failure to provide NH with appropriate transitional services and vocational services since age 14 in accordance with , and subsequent loss of potential future vocational and employment opportunities suffered as a result of the actions of school personnel.

Respectfully,
Maria Roges and Kenneth Hawkes

*Maria Roges*