UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-13471

MARIA ROGES, for herself, and as Parent and Next Friend of N.H.;
KENNETH HAWKES, for himself and as Parent and Next Friend of N.H.;
and N.H., a minor disabled child,
by his parents Maria Roges and Kenneth Hawkes

v.

BOSTON PUBLIC SCHOOLS, JOHN MCDONOUGH, Superintendant;
SCHOOL COMMITTEE, MICHAEL O'NEIL, chairperson; OFFICE OF
SPECIAL EDUCATION AND STUDENT SERVICES, CATHERINE
CONSTANT, Executive Director; and BUREAU OF SPECIAL EDUCATION
APPEALS

MEMORANDUM AND ORDER
ON DEFENDANT BOSTON PUBLIC SCHOOLS'
MOTION TO DISMISS

April 17, 2015

STEARNS, J.

Maria Roges, whose son N.H. is autistic, has, along with her husband, Kenneth Hawkes, waged a protracted campaign to persuade the Boston Public Schools (BPS) to provide an appropriate educational placement for N.H. The campaign began when N.H. was 14 years old. He has now turned 18. Since age 14, N.H. has been tutored at home at the expense of BPS. The parents and BPS agree that this is not the appropriate educational placement for N.H. They agree on little else. The court became involved in

September of 2014, when Roges and Hawkes, proceeding *pro se*, brought suit against the named defendants. Before the court is a motion brought by BPS to dismiss the individual defendants and certain of the damages claims.

BACKGROUND

In the Board of Special Education Appeals (BSEA) decision, affirming the position of BPS, N.H. "is described as a likeable teenager who enjoys many interests, including riding his bicycle and scooter, building with Legos, reading history books, and using a computer or hand-held device for many activities including games, e-books, educational programs, Internet research and social media." BSEA Decision #1308779 (BSEA Dec.) at 5 ¶ 2. N.H. was diagnosed with autism at age three and has been attending BPS schools since that time. *Id.* at 5 ¶¶ 1 & 3. N.H. was placed in a mainstream classroom for first grade and continued in integrated classrooms through the seventh grade. *Id.* at 5 ¶ 5.

Seventh grade (the 2010-2011 school year) was N.H.'s last in-school placement. During that year, N.H. attended classes at Harbor Pilot Middle School. Am. Compl. ¶ 23 and BSEA Dec. at 5 ¶ 6. According to the Amended Complaint, beginning in December of 2010, the staff of Harbor School "isolated N.H. for most of each afternoon . . . physically removing

him from his classroom, during which time the school provided no educational services to N.H." Am. Compl. ¶ 23. As a result of this isolation, N.H.'s behavior began to deteriorate. *Id.* ¶ 24. On March 31, 2011, N.H. was forcefully restrained, in violation of his behavior plan, by the staff at Harbor School. *Id.* ¶ 25. As a result, N.H.'s behavior further degenerated. *Id.* ¶ 28. In April of 2011, N.H. "was involved in one incident of aggression towards another student" and, a few days later, "a teacher alleged that N.H. had physically assaulted him." N.H. received a 1-2 day suspension, which was later rescinded. BSEA Dec. at 7 ¶ 14 and Am. Compl. ¶ 29. Following the alleged assault, N.H.'s parents withdrew him from Harbor School, and at the parents' request, N.H. was granted a 45-day transitional placement. Am. Compl. ¶ 29.

The Amended Complaint offers no details of N.H.'s schooling since 2011, but the essentials can be gleaned from the BSEA decision. In the summer of 2011, BPS provided home instruction to N.H. through a personal tutor and, later, the services of an Applied Behavior Analysis (ABA) therapist. BSEA Dec. at 8 ¶¶ 18-20. In the fall of 2011, N.H. was tested by his providers and by a neuropsychologist selected by his parents. *Id.* at 8 ¶ 21. Following this testing, in December of 2011, BPS proposed a new Individualized Education Plan (IEP) entailing placement of N.H. at the

Community Academy of Science and Health (CASH). While CASH is housed at Harbor School, it is not an integrated setting. *Id.* at 11 ¶ 33. N.H.'s parents partially rejected the new IEP in March of 2012. *Id.* at 11 ¶ 34. In early 2012, BPS proposed an alternative placement at West Roxbury Academy (WRA). The parents indicated that they would approve the placement if N.H. reacted favorably to a visit to WRA. In a twist of circular logic, BPS responded that N.H. could visit WRA only if the parents first agreed to the placement. A standoff ensued, and the parents ultimately rejected the placement. *Id.* at 11 ¶ 35.

By the fall of 2012, N.H. still lacked an acceptable placement. *Id.* at 11 ¶ 37. In November of 2012, BPS refloated the proposal to place N.H. at CASH, but his parents refused it as too restrictive. *Id.* at 12 ¶ 38. For the remainder of the 2012-2013 school year, the parents and BPS discussed alternative placements for N.H. without reaching an agreement. *Id.* at 12 ¶ 39.

On May 31, 2013, the parents filed a Request for Hearing with the BSEA. The hearing was postponed several times as BPS and the parents attempted to resolve their differences. In January of 2013, BPS conducted a psychological evaluation of N.H. as well as an assistive technology assessment. *Id.* at 12 ¶ 42. In January and February of 2014, N.H.'s IEP

team met to develop a new IEP for N.H. "BPS indicated that it would be proposing a substantially separate program. Parents stated that they were seeking a full inclusion placement." *Id.* at 13 ¶ 47. In March of 2014, BPS proposed a "final" IEP that involved placing N.H. at the Boston Community Leadership Academy in a dedicated classroom. *Id.* at 13-14 ¶¶ 49-56. On June 13, 2014, BSEA, in a formal opinion, found that the March 2014 IEP satisfied BPS's obligation to provide N.H. with a Free and Appropriate Public Education (FAPE).

On September 9, 2014, the parents filed a Complaint in this court on behalf of N.H. (later amended on September 29, 2014) seeking the reversal of the BSEA decision and the ordering of compensatory occupational, speech, and Adaptive Physical Education services for N.H. The parents also ask the court to enjoin BPS from requiring liability waivers as a condition of providing N.H. with the educational services, to award monetary damages for the alleged physical and psychological harm caused to N.H. and to them personally, and to order BPS to offer transitional and vocational services to N.H. The City of Boston, on behalf of the individually named defendants, as well as the BPS, the School Committee, and the Office of Special Education and Student Services, seeks dismissal of any claims arising prior

to May 31, 2011, all claims against the individually named defendants, and any claims for monetary compensation.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Dismissal of a claim is appropriate when a complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (citation and internal question marks omitted). In evaluating the factual allegations of a complaint, the court "must accept all well-pleaded facts alleged in the [c]omplaint as true and draw all reasonable inferences in favor of the plaintiff." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). The court may also consider "facts and documents that are part of or incorporated into the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008).[1]

---

[1] These are contained in the Administrative Record (AR) compiled by the BSEA.

DISCUSSION

I will address the City's several arguments for dismissal in turn.

*Quality of Pleading*

The City argues in the first and third instances that the Amended Complaint should be dismissed because the facts are not "well-pleaded" within the meaning of Fed. R. Civ. P. 8(a) & (e) and 10(b). While it is true that *pro se* plaintiffs must comply with the formal rules of procedure, *see Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 140 (1st Cir. 1985), a court will view pleadings drafted by persons unschooled in the law with an indulgent eye, and "not automatically . . . resolve material ambiguities against the pleader." *Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 23 n.4 (1st Cir. 2000). So it will be here.

*Statute of Limitations*

The City contends that all claims predating May 31, 2011, are barred by the IDEA two-year statute of limitations. *See* 20 U.S.C. § 1415(f)(3)(C). Plaintiffs argue that they only learned of the forcible restraint of N.H. on March 31, 2011, in July of 2011. (The statute of limitations under IDEA does not begin to run until such time as a plaintiff "knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C)). The record does not support the parents' claim in

this regard. The Amended Complaint states that only "by luck and extremely careful questioning of N.H." did the father become aware "of the restraint." *Id.* ¶ 28. N.H.'s father then (again according to the Amended Complaint) wrote to the principal and staff of the Harbor School, causing the School to "amend[] the initial incident report to reveal the use of a physical restraint." *Id.* ¶ 28. The amendment to the incident report, which is an exhibit in the BSEA record (the authenticity of which is not disputed), is dated April 1, 2011. AR at 866 ("Addendum to Incident report dated 3/31/2011"). The inference is inescapable that while N.H.'s parents may have acquired additional information about the March 31, 2011 event during the appeal of N.H.'s suspension in July 2011, they were made aware of the event itself almost immediately after it occurred.

Although IDEA specifies three exceptions to the two-year limitations period, none of them apply here. If a State has an "explicit time limitation" for requesting a hearing, it will control. 20 U.S.C. § 1415(f)(3)(C). This is not the case in Massachusetts. The two-year limitation also does not apply if the parent failed to request a hearing as a result of "specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint," or because of "the local educational agency's withholding of information from the parent that was

required under this subchapter to be provided to the parent." 20 U.S.C. § 1415(f)(3)(D). The Amended Complaint does not allege facts supporting either the second or the third exception.

*Individually Named Defendants & Monetary Damages*[2]

The City's second and fifth arguments are intertwined and will be treated together. The City maintains that, as a matter of law, the individually named defendants should be dismissed and the City of Boston substituted as the proper defendant. Moreover, the City argues that all monetary damages sought against the defendants should be dismissed as not recoverable under IDEA or "other statutory schemes." It is "black letter law that . . . money damages of any sort — are not available in a private suit under the IDEA." *Diaz-Fonseca*, 451 F.3d at 28 (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003)). This is true not only with regard to the City but also the individually named defendants: "No claim for

---

[2] In the Amended Complaint N.H.'s parents state: "Plaintiffs, as parents of N.H. have suffered emotionally as a result of the actions of Boston Public Schools, and suffered lost earnings to time spent meeting and corresponding with school administrators to resolve N.H.'s return to school, accompanying N.H. to evaluations, and preparing for a hearing at the BSEA." Am. Compl. ¶ 32. The First Circuit has squarely held that compensatory damages such as "those for lost wages and emotional distress, are simply not available [under IDEA] as a matter of law." *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 32 (1st Cir. 2006). Consequently, to the extent that paragraph 32 of the Amended Complaint is construed as a prayer by the parents for monetary damages, it will be dismissed.

monetary relief can thus be stated against individual defendants under IDEA." *Id.* at 35; *see also Taylor v. Altoona Area Sch. Dist.*, 513 F. 2d 540, 548-555 (W.D. Pa. 2007).

Outside of the federal IDEA context, Massachusetts tort law might be seen as an avenue by which N.H. could seek compensation for injuries he suffered as a result of being forcibly restrained in March of 2011 (although the Amended Complaint does not identify the school personnel responsible). However, under the Massachusetts Tort Claims Act, to recover damages for the negligent acts of state or municipal officials, a claimant must present a claim "in writing to the [defendant] within two years after the date upon which the cause of action arose." Mass. Gen. Laws ch. 258, § 4. "Presentment is . . . a statutory condition precedent to recovery." *Vasys v. Metro. Dist. Comm'n*, 387 Mass. 51, 55 (1982). Strict compliance is the rule. *Richardson v. Dailey*, 424 Mass. 258, 261-262 (1997). "Presentment ensures that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment or inflated or nonmeritorious claims, settle valid claims expeditiously, and takes steps to ensure that similar claims will not be brought in the future." *Lodge v. Dist. Attorney for the Suffolk Dist.*, 21 Mass. App. Ct. 277, 283 (1985). The parents

respond that they made the required presentment in the body of their request for a hearing before the BSEA. Pl.'s Opp. at 4 ¶ 6. The request, however, (assuming its adequacy) was submitted on May 31, 2013, more than two years after the alleged tort occurred.

The parents in their opposition also reference a Ninth Circuit case in which plaintiffs, in addition to IDEA violations, alleged violations "of their constitutional rights to substantive due process and equal protection under § 1983, the Rehabilitation Act, the Americans with Disabilities Act and state law." *Eason v. Clark County Sch. Dist.*, 303 F.3d 1137, 1139 (9th Cir. 2002). The First Circuit, however, has foreclosed any resort to alternative pleading by holding that "reconstituted IDEA claims cannot be brought under other federal statutes in an attempt to secure remedies that are unavailable under the IDEA." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 38 (1st Cir. 2012) (citing *Diaz-Fonseca*, 451 F.3d at 29). To the extent that the Amended Complaint asserts a failure on the part of BPS to provide N.H. with an adequate FAPE (based on an appropriate school placement), the remedies are limited to those offered under the IDEA.

It is true that, "the IDEA does not restrict rights and remedies that were already independently available through other sources of law." *Diaz-Fonseca*, 451 F.3d at 29. "[A] discrimination claim under the Rehabilitation

Act or the ADA involving a denial of a FAPE is not coextensive with an IDEA claim." *Elizabeth B.*, 675 F.3d at 40. Thus, "*Diaz-Fonseca* does not bar a plaintiff from bringing a discrimination claim based on a denial of FAPE in conjunction with an IDEA claim, because the discrimination claim involves the additional element of disability-based animus. As such, the discrimination claim does not 'turn[] entirely on the rights created by statute in the IDEA." *Id.* at n.8 (quoting *Diaz-Fonseca*, 451 F.3d at 29). However, the obstacle the parents face here is not dissimilar from the defect that bars any pursuit of relief under the Tort Claims Act: a jurisdictional prerequisite of a complaint under the ADA (or the Rehabilitation Act) is the filing of an administrative charge with the EEOC within 180 days of the alleged discriminatory act or acts. *See* 42 U.S.C. § 2000e; *see also Bonilla v. Muebles J.J. Alvarez Inc.*, 194 F.3d 275, 277-278 (1st Cir. 1999).[3] It is clear that in N.H.'s case, this jurisdictional requisite was never met.

What remains then is the core issue raised by the Amended Complaint: Did N.H. receive the FAPE to which he was entitled; that is, was

---

[3] I also note that neither the ADA nor the Rehabilitation Act authorizes an assessment of damages against individual defendants, *Taylor*, 513 F.2d at 555-563. Nor may the jurisdictional requisites of the statutes be circumvented by repackaging claims under § 1983. *See id.* at 555 and 563 *and Elizabeth B.*, 675 F.3d at 44.

he prescribed an IEP "reasonably calculated to confer a meaningful educational benefit"? *Sebastian M. v. King Philip Reg. Sch. Dist,* 685 F.3d 79, 84 (1st Cir. 2012). And, if not, what are the remedies available to him? This is a matter to be resolved on the record by way of summary judgment. As with other administrative appeals, a motion for summary judgment in an IDEA case is simply a vehicle for deciding the relevant issues; thus, the non-moving party is not entitled to the usual inferences in its favor. *Id.* at 84-85.[4]

---

[4] Review basically follows the standards of the Administrative Procedure Act. *Amann v. Town of Stow*, 991 F.2d 929, 931 (1st Cir. 1993) (reliance is primarily on the administrative record). Deference is to be given when reviewing IDEA cases to the policy judgments of state and local education officials. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *see also Lessard v. Wilton Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 24 (1st Cir. 2008) ("[J]udicial review falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard.").

ORDER

For the foregoing reasons the City of Boston's motion to dismiss is ALLOWED as follows. All claims arising from events prior to May 31, 2011 are DISMISSED. All claims against individual defendants are DISMISSED with prejudice and the City of Boston is substituted in their stead as the appropriate defendant. All claims for relief, monetary or otherwise, not afforded by the IDEA are also DISMISSED. The parties will abide by the following scheduling order:

(1) The parties will have 31 days (until **May 18, 2015**) to agree on any supplements to the record; any disputes regarding the content of the record may be brought to the court for resolution prior to that date;[5]

(2) The parties will then have 30 days (until **June 17, 2015**) to file for summary judgment;

(3) The parties will then have 21 days to file replies (until **July 8, 2015**).

---

[5] The court notes a motion filed by the plaintiffs on April 15, 2015 (Dkt # 29) to supplement the Administrative Record and the joint statement filed by the parties on February 6, 2015 (Dkt # 18). The court found the schedule submitted on February 6, 2015 to be too protracted and substitutes the one set out here. As a result, the plaintiffs' motion is now moot. Plaintiffs should confer with the City, supplement the record as agreed, and the parties should notify the court of any remaining disputes.

The court is sensitive to the need to resolve the matter of an appropriate placement for N.H. prior to the start of the 2015-2016 school year (in late August/early September). If the parties are amenable to submitting the dispute to the court sponsored mediation program conducted by the Magistrate Judges, they should notify the court promptly to permit any necessary adjustments to the scheduling order.

        SO ORDERED.
        /s/ Richard G. Stearns
        UNITED STATES DISTRICT JUDGE